UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NORTH CAROLINA
RALEIGH DIVISION

| | |
|---|---|
| IN RE:<br><br>**KIRK KRISTOFER SORENSEN,**<br><br>**DEBTOR.** | **CASE NO. 20-02490-5-DMW**<br>**CHAPTER 7** |
| **KITTY HAWK HOLDINGS, LLC,**<br><br>*Plaintiff*,<br><br>vs.<br><br>**KIRK KRISTOFER SORENSEN,**<br><br>*Defendant.* | **AP NO. 20-_____-5-DMW** |

## COMPLAINT OBJECTING TO DISCHARGEABILITY OF DEBT

**NOW COMES** Plaintiff KITTY HAWK HOLDINGS, LLC ("Plaintiff"), by and through undersigned counsel and pursuant to § 523 of the Bankruptcy Code and Rules 4007 and 7001(6) of the Federal Rules of Bankruptcy Procedure, and complaining of Debtor-Defendant KIRK KRISTOFER SORENSEN ("Debtor" or "Defendant"), and hereby avers, asserts, alleges and states as follows:

### INTRODUCTION AND NATURE OF ACTION

1. This is an action by Plaintiff, against Defendant, seeking a determination that a particular debt owed by Defendant and a related entity, Cross Fit Brier Creek, Inc. ("CFBC"), is nondischargeable pursuant to 11 U.S.C. § 523(a) and Federal Rule of Bankruptcy Procedure 7001(6), awarding Plaintiff its

reasonable attorneys' fees, costs and expenses incurred as a result of Defendant's actions and conduct.

## IDENTIFICATION OF THE PARTIES

2. Plaintiff is a limited liability company organized and existing under the laws of the State of North Carolina, with a principal place of business located at 190 Kitty Hawk Drive, Morrisville, NC 27560

3. The Debtor, an individual citizen and resident of Raleigh, North Carolina, residing at 9105 Falkwood Road, Raleigh, North Carolina 27617.

4. Defendant filed a voluntary petition seeking relief under chapter 7 of the Bankruptcy Code with the United States Bankruptcy Court for the Eastern District of North Carolina (the "Bankruptcy Court") on July 9, 2020 (the "Petition Date"), BK Case No. 20-2490-5-DMW (the "Individual Bankruptcy Case").

5. Holmes P. Harden was appointed as the Chapter 7 Trustee to administer both the Individual Bankruptcy Case and the Corporate Bankruptcy Case.

## JURISDICTION, AUTHORITY, AND VENUE

6. This adversary proceeding relates to the Individual Bankruptcy Case, which Defendant commenced with, and remains pending before, the Bankruptcy Court.

7. The Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and, furthermore, this action is a core proceeding pursuant to 28 U.S.C. § 157(b)(2), as it seeks a determination as to the

dischargeability of a particular debt. Id. § 157(b)(2)(I).

8. This Court, pursuant to *Budget Service Co. v. Better Homes of Va.*, 804 F.2d 289 (4th Cir. 1986), has jurisdiction to enter a final and dispositive Order granting the relief requested herein

9. The Court has the authority to hear this matter pursuant to the General Order of Reference entered by the United States District Court for the Eastern District of North Carolina on August 3, 1984.

10. This Court has personal jurisdiction over Defendant who sought relief through the filing of the Individual Bankruptcy Case and, at all times relevant hereunder, was a citizen and resident of Wake County, North Carolina, which is within this judicial district.

11. Venue is proper in this Court pursuant to 28 U.S.C. §§ 1391, 1408, and 1409, as all of the actions complained of and giving rise to the claims alleged herein arose in this judicial district, within which Plaintiff and Defendant reside and/or are present and regularly conduct their business operations and affairs.

## FACTUAL ALLEGATIONS

12. Prior to, and until July 9, 2020, the Debtor was the sole officer and shareholder of CROSS FIT BRIER CREEK, INC. ("CFBC" or "CFBC"), which operated a cross fit gym facility located at 201 Kitty Hawk Drive, Suite 109, Morrisville, North Carolina 27560 (the "Gym" or the "Premises").

13. CFBC filed a voluntary petition seeking relief under chapter 7 of the Bankruptcy Code with the Bankruptcy Court on July 9, 2020 (the "Petition Date"),

BK Case No. 20-02486-5-DMW (the "Corporate Bankruptcy Case").

14. The Individual Bankruptcy Case filed by the Debtor was filed simultaneously with the Corporate Bankruptcy Case.

15. Prior to the Petition Date, in early 2014, at the request of Defendant, the parties began to discuss the possibility of Plaintiff providing a loan to Defendant because of financial issues being experienced by CFBC and Defendant. As part of these discussions, Defendant also conveyed the need for certain equipment to be used in the business operations of Debtor.

16. In order to evaluate the likelihood that any such loan would and could be repaid, Plaintiff requested that the Defendant provide financial statements and reports of CFBC.

17. Between 2014 and February 19, 2016, the Defendant provided written profit and loss statements, balance sheets, and other written statements purporting to reflect, *inter alia*, the gross revenue, operating expenses, and total memberships purchased by customers of CFBC (collectively, the "Financial Statements").

18. The Financial Statements were provided by the Defendant for the purpose of deceiving and inducing Plaintiff to extend funds, credit, and/or property to CFBC and the Defendant.

19. The Financial Statements were materially false in that they substantially overstated CFBC's gross revenue and total number of monthly memberships, misleading Plaintiff to believe CFBC's net operating income was

materially and significantly higher than in it was in reality.

20. Similarly, Defendant confirmed such false and materially overstated income and membership figures in written correspondences and communications with Plaintiff.

21. In early 2016, Plaintiff, in reasonable reliance on the information reflected in Financial Statements, agreed to loan funds to Defendant and CFBC, as well as purchase certain equipment to be used by CFBC in its business operations.

22. Specifically, on February 19, 2016, the Debtor, executed and delivered a Promissory Note in favor of Plaintiff in the original principal amount of $150,000.00 (the "KHH Note"), which was to be repaid with nine-percent (9.00%) interest on or before December 31, 2016. The KHH Note also contemplated that the transfer of fifty-one percent (51.00%) of CFBC to Plaintiff. A copy of the KHH Note is attached hereto as **EXHIBIT A** and incorporated herein by reference.

23. Also in early 2016 and in addition to the credit extended under the KHH Loan, Plaintiff also advanced to the Debtor the sum of $10,000.00, which was to be repaid within thirty (30) days of the date of the KHH Note (i.e., February 19, 2016) (the $10,000.00 extended and the KHH Loan are collectively referred to herein as the "Indebtedness.").

24. On February 23, 2016, at the request of the Defendant, KHH purchased various items of gym and exercise equipment from Rouge Fitness, totaling $16,223.50 (the "2016 Equipment"), which equipment was to be used by

CFBC in its operations. A copy of the itemized receipt for Order No. USB239849 is attached hereto as **EXHIBIT B** and incorporated herein by reference.

25. Plaintiff never conveyed, nor intended to convey, any ownership interest in the 2016 Equipment, but rather, Plaintiff allowed Defendant and CFBC to have possession of the 2016 Equipment prior to June 2020.

26. At the request of Plaintiff, Defendant agreed to continue providing Financial Statements to Plaintiff on a monthly basis following the Indebtedness being incurred.

27. Defendant provided Financial Statements to Plaintiff between February 2016 and December 31, 2016, which habitually and materially overstated CFBC's gross revenue and total number of monthly memberships, misleading Plaintiff to believe CFBC's net operating income was materially and significantly higher than in it was in reality.

28. The materially false Financial Statements were provided by the Defendant prior to the maturity date of the KHH were intended to continue to deceive Plaintiff.

29. Furthermore, between February 2016 and December 31, 2016, the Defendant repeatedly confirmed that he understood the KHH Note to require transfer of fifty-one percent (51.00%) of CFBC to Plaintiff and that he fully intended to execute the necessary documents to make sure transfer.

30. In late 2016, Defendant requested that Plaintiff agree to extend the maturity date set forth in the KHH Note or otherwise renew the KHH Note.

31.     In reasonable and justifiable reliance on the information reflected in Financial Statements and Defendant's confirmation that he would transfer fifty-one percent (51.00%) of CFBC to Plaintiff, Plaintiff agreed to renew the KHH Note and extend the maturity date to December 31, 2017, as evidenced by an Amendment to Loan and Promissory Note with Balloon Payment executed and delivered by the Debtor on or about January 23, 2017 (the "Amended KHH Note").  A copy of the Amended KHH Note is attached hereto as **EXHIBIT C** and incorporated herein by reference.  The KHH Note and the Amended KHH Note are collectively referred to herein as, the "KHH Loan".

32.     Following the execution of the Amended KHH Note, Defendant continued to provide Plaintiff with Financial Statements of CFBC that habitually and materially overstated CFBC's gross revenue and total number of monthly memberships for the purpose of deterring Plaintiff from attempting to enforce its rights with respect to collection of the Indebtedness.

33.     Similarly, Plaintiff continued to make statements regarding his intent to convey fifty-one percent (51.00%) of CFBC to Plaintiff and that he fully intended to execute the necessary documents to facilitate said transfer in accordance with the KHH Loan.

34.     In reasonable and justifiable reliance on the information reflected in Financial Statements and Defendant's confirmation that he would transfer fifty-one percent (51.00%) of CFBC to Plaintiff, on December 11, 2019, KHH, at the request of Defendant, purchased various items of gym and exercise equipment

from Rouge Fitness, totaling $12,462.46 (the "2019 Equipment"), that was to be utilized in the operations of CFBC. A copy of the itemized receipt for Order No. USC02473764 is attached hereto as **EXHIBIT D** and incorporated herein by reference.

35. Plaintiff never conveyed, nor intended to convey, any ownership interest in the 2019 Equipment, but rather, Plaintiff allowed the Defendant and CFBC to have possession of the 2019 Equipment prior to June 2020.

36. Plaintiff, prior to the Petition Date and on or about June 25, 2020, commenced a civil action against Defendant and CFBC with the Superior Court Division of the General Court of Justice for Wake County, File No. 20-CVS-500122 (the "State Court Action").

37. Plaintiff, in the State Court Action, filed a Motion for Temporary Restraining Order and Preliminary Injunction, which sought temporary and injunctive relief against Defendant and CFBC from selling, transferring, disposing, secreting away, or otherwise assigning any assets of Defendant and CFBC (collectively, the "TRO Motion").

38. The TRO Motion was heard and orally granted by the Wake County Superior Court on July 9, 2020; however, and both the Individual Bankruptcy Case and the Corporate Bankruptcy Case were filed prior to entry of an Order on the TRO Motion in the State Court Action.

39. CFBC, on Schedule A/B, identified and itemized on *Exhibit A* attached thereto, its ownership interest in certain fitness equipment, with a net

book value of $71,063.62, and a current value of $53,297.71 (the "Scheduled Equipment"). Despite not having any ownership interest in the KHH Equipment, all of which was purchased and owned by KHH, the Debtor scheduled and asserted in Schedule A/B that it possessed ownership interest in the KHH Equipment by including it in the Scheduled Equipment.

40. Following the filing of the Corporate Bankruptcy Case, and due to the actions and conduct of Defendant, including the false and improper characterization of the KHH Equipment as being owned by the Corporate Debtor, Plaintiff was forced to expend the sum of $20,000.00, to purchase the KHH Equipment from the Trustee. A copy of the Consent Order Authorizing Sale of Personal Property Free and Clear of Liens [D.E. 40] entered in the Corporate Bankruptcy Case, is attached hereto as **EXHIBIT E** and incorporated herein by reference.

41. As of the Petition Date, the outstanding balance owed to Plaintiff, by Defendant, was $290,715.79, and consisted of the following:

| Description of Debt | Amount |
| --- | --- |
| KHH Loan (KHH Note & KHH Amended Note) | $227,851.96 |
| 2016 Equipment Costs and Expenses | $16,223.50 |
| 2019 Equipment Costs and Expenses | $12,462.46 |
| Attorneys' Fees, Costs, & Expenses | $34,177.87 |

**FIRST CLAIM FOR RELIEF**
**[11 U.S.C. § 523(a)(2)(B)]**

42. Plaintiff incorporates by reference all the allegations contained in this Complaint as if fully set forth herein.

Pursuant to 11 U.S.C. § 523(a)(2)(B) provides, in pertinent part, as follows:

A discharge under section 727 . . . of this title does not discharge an individual debtor from any debt—

. . . .

(2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by—

(B) use of a statement in writing—

(i) that is materially false;

(ii) respecting the debtor's or an insider's financial condition;

(iii) on which the creditor to whom the debtor is liable for such money, property, services, or credit reasonably relied; and

(iv) that the debtor caused to be made or published with intent to deceive[.]

43. As set forth above, the Defendant provided Financial Statements of CFBC to Plaintiff that were materially false.

44. CFBC is an insider of the Defendant.

45. Defendant provided the Financial Statements, knowing there were materially false, and did so with the intent to deceive Plaintiff and obtain money and property.

46. Plaintiff relied on the Financial Statements, and based on the relationship of the parties and relevant facts and circumstances, such reliance was justifiable and reasonable.

47. Defendant's provision of the materially false Financial Statements

allowed Defendant to obtain the funds extended under the KHH Note and the 2016 Equipment.

48. Following the execution of the KHH Note, Plaintiff's continuing provision of the materially false Financial Statements allowed the Defendant to obtain the 2019 Equipment and the "extension, renewal, or refinancing," of the debt owed under the KHH Note, as evidenced by the Amended KHH Note and the 2019 Equipment.

49. Therefore, pursuant to 11 U.S.C. § 523(a)(2)(B), the debt owed by Plaintiff should not be, and is not, dischargeable in this Bankruptcy Case.

## SECOND CLAIM FOR RELIEF
**[11 U.S.C. § 523(a)(2)(A)]**

50. Plaintiff incorporates by reference all the allegations contained in this Complaint as if fully set forth herein.

51. Pursuant to 11 U.S.C. § 523(a)(2)(A) provides, in pertinent part, as follows:

> A discharge under section 727 . . . of this title does not discharge an individual debtor from any debt—
>
> . . . .
>
> (2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by—
>
> (A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition;

52. As set forth above, Plaintiff following the execution of the Note,

Defendant continued to make statements that it was his intent to convey fifty-one percent (51.00%) in CFBC to Plaintiff, as contemplated by the KHH Note, and that he fully intended to execute the necessary documents to make sure transfer.

53. Such statements were materially false in that Plaintiff had no intention of convey any interest in CFBC to Plaintiff.

54. Defendant knew these statements were materially false and made them with the calculated intent to deceive Plaintiff.

55. Plaintiff, in fact, was deceived by, and relied upon, these statements made by Defendant.

56. Based on the relationship of the parties and relevant facts and circumstances, Plaintiff's reliance on Defendant's statements was justifiable and reasonable.

57. Defendant's statements allowed Defendant to obtain the funds extended under the KHH Note and the 2016 Equipment.

58. Defendant's statements allowed the Defendant to obtain the 2019 Equipment and the "extension, renewal, or refinancing," of the debt owed under the KHH Note, as evidenced by the Amended KHH Note and the 2019 Equipment.

59. Therefore, pursuant to 11 U.S.C. § 523(a)(2)(A), the debt owed by Plaintiff should not be, and is not, dischargeable in this Bankruptcy Case.

## THIRD CLAIM FOR RELIEF
### [11 U.S.C. § 523(a)(4)]

60.  Pursuant to 11 U.S.C. § 523(a)(4) provides, in pertinent part, as follows:

> A discharge under section 727 . . . of this title does not discharge an individual debtor from any debt—
>
>   . . . .
>
>  (4) for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny[.]

61.  The 2016 Equipment and the 2019 Equipment (collectively referred to herein as, the "Equipment") were purchased by Plaintiff and Defendant was not intended to, nor in fact did, have any ownership interest in the Equipment.

62.  Plaintiff entrusted the Defendant with the Equipment so that Defendant could use the Equipment in furtherance and to the benefit of the operations of CFBC.

63.  After lawfully coming into the possession of the Defendant, he converted the Equipment and fraudulently asserted that the Equipment was owned by CFBC.

64.  All circumstances and facts surrounding the conversion of the Equipment, as set forth above, evidence that such conversion was executed with fraudulent intent and that Defendant effectuated such intent knowingly, willingly, and deliberately.

65.  Therefore, pursuant to 11 U.S.C. § 523(a)(4), the actions of

Defendant constitute embezzlement and the debt owed to Plaintiff should not be, and is not, dischargeable in this Bankruptcy Case.

**WHEREFORE,** and for the reasons stated herein, Plaintiff respectfully requests entry of an Order:

1. Determining the debt owed to Plaintiff shall not be subject to the discharge in the Bankruptcy Case pursuant to 11 U.S.C. § 523.

2. Taxing the costs of this action against Defendant; and

3. Providing for such further relief as the Court seems just and proper.

Respectfully submitted this, the 23rd day of November, 2020.

        **BUCKMILLER, BOYETTE & FROST, PLLC**

        BY:  s/ Joseph Z. Frost

        JOSEPH Z. FROST, NCSB No. 44387
        jfrost@bbflawfirm.com

        4700 Six Forks Road, Suite 150
        Raleigh, North Carolina 27609
        Telephone:  (919) 296-5040
        Telefax:  (919) 977-7101

        Counsel for Kitty Hawk Holdings, LLC